UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVEL COMMUNICATIONS, INC., et al.,

    Plaintiffs,

v.

QWEST CORPORATION,

    Defendant.

No. C03-3680P

ORDER ON PLAINTIFFS' MOTION FOR PARTIAL STAY PENDING FCC ACTION AND FOR SCHEDULING CONFERENCE

This matter comes before the Court on a motion by Plaintiffs titled "Motion for Partial Stay Pending FCC Action and for Scheduling Conference Per Local Rule 16(a)." (Dkt. No. 46). In essence, Plaintiffs are seeking an order regarding how this case will proceed on remand from the Ninth Circuit.

Having considered the materials submitted by the parties, the Ninth Circuit's opinion, and the balance of the record in this case, and having heard oral argument from the parties, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion. Plaintiffs seek a partial stay of this case. However, the Court finds and ORDERS that this case should be STAYED in its entirety pending the FCC's resolution of a threshold issue. Any party may move to lift this stay after: (1) the FCC issues an order resolving the scope of the "Waiver Order" at issue in this case; or (2) the FCC indicates that it has declined to issue an order resolving the scope of the Waiver Order. Any party may

ORDER - 1

also move to lift the stay if the FCC has failed to issue an order regarding the scope of the Waiver Order within one year of the date of this Order. The reasons for the Court's Order are set forth below.

**Background**

Plaintiff Davel Communications, Inc. ("Davel") filed a complaint against Defendant Qwest Corporation on November 25, 2003. On December 3, 2003, a group of payphone service providers represented by the same counsel as Davel initiated a similar action, which was consolidated with Davel's case.

In July 2004, the Court granted a motion to dismiss filed by Qwest. Plaintiffs appealed to the Ninth Circuit. In August 2006, the Ninth Circuit issued an order and amended opinion that vacated this Court's order of dismissal and remanded for further proceedings. See Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075 (9th Cir. 2006). Although the Ninth Circuit's opinion provides an extensive overview of the case, the Court provides a summary below for ease of reference.

1. Plaintiffs' Claims

Plaintiffs provide payphone services and purchase telecommunications services from Qwest. Because Qwest operates its own payphones, Plaintiffs are both customers and competitors of Qwest. Some of the services that Qwest provides to Plaintiffs are "public access line" (PAL) and "fraud protection" services.

This dispute stems from provisions of the Federal Telecommunications Act of 1996, which amended Chapter 5 of the Federal Communications Act of 1934. See 47 U.S.C. § 151 et seq. Section 276(a) of the Act provides, in general terms, that dominant carriers may not subsidize their payphone services from their other telecommunications operations and may not prefer or discriminate in favor of their payphone services in the rates charged to competitors. The 1996 Act directed the Federal Communications Commission (FCC) to issue regulations implementing these requirements.

ORDER - 2

The FCC's regulations required local exchange carriers such as Qwest to set payphone service rates and "unbundled features" rates (including rates for fraud protection) according to the FCC's "new services test" (NST). The NST requires that rates for those telecommunications services to which it applies be based on the actual cost of providing the service, plus a reasonable amount of the service provider's overhead costs. The FCC's regulations required Qwest and other carriers to develop NST-compliant rates for the use of public access lines (PALs) by intrastate payphone service providers. The FCC required Qwest and other local exchange carriers to file the new, NST-compliant rates to the utility commissions in the states in the carriers' territory by January 15, 1997, with an effective date no later than April 15, 1997.

On April 10, 1997, a coalition of regional Bell operating companies, including Qwest, asked the FCC for a limited waiver of certain provisions of FCC's requirements. The Coalition requested a 45-day extension (from April 4, 1997 to May 19, 1997) to file NST-compliant intrastate payphone service rates. The Coalition proposed that, if the FCC granted the waiver and allowed Coalition members to file rates that complied with the NST by the extended deadline, those companies would reimburse or provide a credit back to April 15, 1997 to customers purchasing the services if the new rates were lower than the previous non-compliant rates.

The FCC issued a "Waiver Order" on April 15, 1997 that extended the deadline for filing NST-compliant intrastate payphone rates until May 19, 1997. The Waiver Order stated that existing rates would continue in effect from April 15, 1997 until the new, NST-compliant rates became effective. In exchange, Coalition members that relied on the Waiver Order were required to reimburse their customers if their new NST-compliant rates, when effective, were lower than the rates in effect on April 15, 1997.

In 2002, the FCC issued a decision that rejected the Coalition's challenge to the agency's authority to regulate intrastate rates and to require forward-looking cost estimates in determining

rates, as well as the Coalition's challenges to the agency's determination of how overhead costs may be allocated. Following the FCC's decision, Qwest reduced its PAL and fraud protection rates.

Plaintiffs claim that the rates Qwest charged for PAL services from 1997 to 2002 did not comply with the NST. In turn, they argue that the FCC's 1997 Waiver Order requires Qwest to reimburse them for the difference between NST-compliant rates filed in 2002 and allegedly non-compliant rates that Qwest charged from 1997 to 2002. Qwest disputes that any refund obligations under the Waiver Order can extend beyond May 19, 1997. The Ninth Circuit described this issue as follows:

> The threshold dispute regarding the refund claim centers on whether the Waiver Order entitles Davel to the refund, assuming the facts Davel has alleged. Specifically, the parties dispute whether the Waiver Order's reimbursement requirement is limited to the forty-five-day period of the Order's waiver of the rate filing deadline, or whether the reimbursement obligation instead extends indefinitely – that is, until Qwest's NST-compliant rates are on file and effective.

Davel, 460 F.3d at 1088.

Plaintiffs also allege that Qwest violated the Act by failing to file compliant "fraud protection" rates with the FCC from 1997 until 2002 or 2003. Plaintiffs seek damages for this alleged violation measured by the difference between the amounts they were charged for fraud protection services and the compliant rates. As discussed below, Plaintiffs also maintain that they have PAL rate refund claims that are "independent" of the Waiver Order.

2.   This Court's Order

Qwest filed a motion to dismiss, arguing among other things that: (1) Plaintiffs' claims arising out of the payphone service rates were barred by the filed-rate doctrine; (2) Plaintiffs' "fraud protection" claims were barred by the statute of limitations; and (3) in the alternative, the case should be stayed because the primary jurisdiction doctrine required that threshold legal issues be referred to appropriate state and federal agencies. The Court granted Plaintiffs' motion to dismiss, holding that Plaintiffs' refund claims under the Waiver Order were barred by the filed-rate doctrine and that

ORDER - 4

Plaintiffs' fraud protection claims were barred by the applicable two-year statute of limitations set out in 47 U.S.C. § 415.

3. <u>Ninth Circuit's Ruling</u>

The Ninth Circuit vacated this Court's order of dismissal and remanded for further proceedings. The Ninth Circuit's opinion includes several key provisions. First, the court held that the filed-rate doctrine does not bar Plaintiffs' claims for refunds for PAL services based on the Waiver Order. Second, the court held that the scope of the Waiver Order presented a threshold issue that should be referred to the FCC under the primary jurisdiction doctrine. Third, the court indicated that the decision on whether to stay or dismiss without prejudice a case within an administrative agency's primary jurisdiction must be made by this Court. Therefore, the Ninth Circuit "remand[ed] to the district court to determine whether to stay the case or dismiss it without prejudice." <u>Id.</u> at 1091. Finally, the court held that Plaintiffs' claims regarding "fraud protection" rates were not wholly barred by the statute of limitations. Instead, the court held that claims for "amounts paid under non-compliant tariffs within two years prior to the filing of the complaint are timely." <u>Id.</u> at 1093.

**Analysis**

Plaintiffs are seeking an order regarding how the case will proceed following the Ninth Circuit's ruling. Plaintiffs suggest that their claims for refunds of PAL rates based on the Waiver Order should be stayed pending the FCC's resolution of the scope of the Waiver Order, while their "fraud protection" and "independent" PAL refund claims proceed in this Court. In its response to Plaintiffs' motion, Qwest has requested permission to file a dispositive motion directed to Plaintiffs' fraud protection claims. Qwest also asks the Court to refer an additional issue regarding the Waiver Order to the FCC.

1. <u>Whether to Stay or Dismiss the Case</u>

The Ninth Circuit's opinion discussed the factors that this Court should consider on remand regarding whether to stay the case or to dismiss it without prejudice:

ORDER - 5

> Whether to stay or dismiss without prejudice a case with an administrative agency's primary jurisdiction is a decision within the discretion of the district court. The court may stay the case and retain jurisdiction or, "if the parties would not be unfairly disadvantaged, . . . dismiss the case without prejudice." The factor most often considered in determining whether a party will be disadvantaged by dismissal without prejudice is whether there is a risk that the statute of limitations may run on the claims pending agency resolution of threshold issues. Also, where the court suspends proceedings to give preliminary deference to an administrative agency but further judicial proceedings are contemplated, then jurisdiction should ordinarily be retained via a stay of proceedings, not relinquished via a dismissal.
>
> Here, because it dismissed the case on the basis of the filed-rate doctrine, the district court did not address whether Davel would be disadvantaged by dismissal. In particular, the district court had no occasion to consider that Davel's claims are subject to a two-year statute of limitations that began to run, at the latest, when Qwest first filed its NST-compliant tariffs, so Davel may well lose its claims before the FCC resolves the threshold issue.
>
> We therefore remand to the district court to determine whether to stay the case or dismiss it without prejudice, applying the pertinent factors.

Id. at 1091 (internal citations omitted).

As Plaintiffs note, the Ninth Circuit's opinion strongly suggests that a stay, rather than dismissal without prejudice, it is the appropriate course of action under the pertinent factors. There is a risk that the two-year statute of limitations may run pending the FCC's resolution of the threshold issue regarding the scope of the Waiver Order. In addition, further proceedings may be necessary after the FCC resolves the threshold issue. As a result, the Court concludes that a stay, rather than dismissal without prejudice, is warranted.

Plaintiffs suggest that they should be permitted to pursue their "fraud protection" claims in this Court pending the FCC's resolution of the scope of the Waiver Order. In response, Qwest suggests that "the Fraud Protection claims are equally subject to referral to the FCC" and that "the Court should permit Qwest to file a dispositive motion invoking the filed rate doctrine and the doctrine of primary jurisdiction so that the Court can refer Davel's Fraud Protection claims to the FCC." (Opp. at 10-11). Plaintiffs also contend that they have "independent" PAL refund claims that do not depend on

ORDER - 6

the FCC's resolution of the scope of the Waiver Order and that they should be permitted to pursue those claims in this Court at this time.[1]

As a preliminary matter, it should be noted that the Ninth Circuit's opinion directed this Court on remand "to determine whether to stay the <u>case</u> or dismiss it without prejudice." <u>Id.</u> at 1091 (emphasis added). The Ninth Circuit also stated that questions regarding the scope of the Waiver Order were "at the core of this case." <u>Id.</u> at 1090. The term "case" may be defined as a "civil or criminal proceeding, action, suit, or controversy at law or in equity." <u>Black's Law Dictionary</u> (8th Ed. 2004). As a result, the Ninth Circuit's direction that the Court must determine on remand "whether to stay the <u>case</u> or dismiss it without prejudice" could be construed as meaning that if the Court determines that a stay rather than dismissal is appropriate, the case should be stayed in its entirety. At the same time, the Ninth Circuit's use of the term "case" could arguably be construed to refer to Plaintiffs' claims for PAL refunds under the Waiver Order, rather than to the entire case.

However, even if the Ninth Circuit's use of the term "case" is not construed to refer to the case in its entirety, a district court has inherent authority to stay a case. See <u>Rohan ex rel. Gates v. Woodford</u>, 334 F.3d 803, 817 (9th Cir. 2003). As the Ninth Circuit has noted:

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administration, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court. In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it.

<u>Leyva v. Certified Grocers of California, Ltd.</u>, 593 F.2d 857, 863-64 (9th Cir. 1979) (internal citations omitted). The <u>Leyva</u> court noted that "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." <u>Id.</u> at 864.

---

[1] The Court does not determine in this Order whether Plaintiffs have fairly alleged "independent" PAL refund claims in their complaints consistent with Fed. R. Civ. P. 8(a).

ORDER - 7

In the Court's view, it would be more efficient for the Court's docket to stay the case in its entirety pending the FCC's resolution of the threshold issue regarding the scope of the Waiver Order. Otherwise, the claims in this case will proceed on separate tracks, effectively splitting a single case into multiple proceedings. In terms of fairness to the parties, the Court is mindful that Plaintiffs filed their complaints in late 2003 and that it is not certain when the FCC may resolve the threshold issue regarding the scope of the Waiver Order. However, the Ninth Circuit noted in its opinion that "[t]he agency has provided some indication that it will determine this issue in due course." Davel, 460 F.3d at 1090. In addition, Plaintiff's fraud protection and so-called "independent" PAL refund claims do not appear to present questions that must be urgently decided before the FCC resolves the scope of the Waiver Order. Plaintiffs are essentially maintaining that Qwest overcharged them for PAL and fraud protection services from 1997 to 2002 or 2003. Because Plaintiffs may be made whole for any alleged violations between 1997 and 2002 or 2003 through a monetary award, the Court does not find that Plaintiffs' fraud protection or "independent" PAL claims present questions of high urgency.[2]

The Court will therefore stay this case in its entirety, pending the FCC's resolution of the threshold issue regarding the scope of the Waiver Order. Any party may move to lift the stay after: (1) the FCC issues an order resolving the scope of the Waiver Order; or (2) the FCC indicates that it has declined to issue an order resolving the scope of the Waiver Order. Any party may also move to lift the stay if the FCC fails to issue an order regarding the scope of the Waiver Order within one year of the date of this Order.

Because the Court is staying this action in its entirety, the Court declines Qwest's request to file a dispositive motion at this time regarding the referral of Plaintiffs' fraud protection claims to the FCC under the primary jurisdiction doctrine. Qwest may file such a motion after the stay is lifted.

---

[2] In terms of urgency, it bears noting that Plaintiffs waited until six years after their "fraud protection" claims initially accrued to file this lawsuit. See id. at 1091-92.

ORDER - 8

2.     Referral of Additional Issue to FCC

In its response to Plaintiffs' motion, Qwest asks that the Court refer the question of whether Qwest "relied" on the Waiver Order to the FCC. The Court declines to do so at this time. Putting aside the procedural concern that Qwest raised this request in its opposition brief, rather than in a separate motion brought pursuant Rule 7(b), it is not clear to the Court that it is necessary to refer this issue to the FCC at the present time. In any case, it appears that Qwest has already raised this issue with the FCC.

**Conclusion**

Consistent with the discussion above, the Court STAYS this case in its entirety. Any party may move to lift the stay after: (1) the FCC issues an order resolving the scope of the Waiver Order; or (2) the FCC indicates that it has declined to issue an order resolving the scope of the Waiver Order. In addition, any party may move to lift the stay if the FCC has failed to issue an order regarding the scope of the Waiver Order within one year of the date of this Order.

The Clerk is directed to send copies of this order to all counsel of record.

Dated:   January 29, 2007

                                        s/Marsha J. Pechman
                                        Marsha J. Pechman
                                        United States District Judge